UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARIO HERNANDEZ GOMEZ AND         :
MARINA VELASQUEZ,
               Plaintiffs,         :

          -against-         :

4 RUNNERS, INC. (d/b/a ISTANBUL         :
GRILL) AND EROL DONER,

              :

             Defendants.
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: _12/7/17_

**REPORT AND RECOMMENDATION**

14-CV-8998 (JPO) (KNF)

TO THE HONORABLE J. PAUL OETKEN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Mario Hernandez Gomez ("Hernandez") and Marina Velasquez commenced this action

for unpaid wages and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201-219, and New York Labor Law, §§ 190-199-a. The defendants' motion for

summary judgment was denied because "there is a genuine dispute of material fact regarding

whether the Istanbul Grill had gross annual income of more than $500,000." Docket Entry No.

40. Thereafter, defendants 4 Runners, Inc. (d/b/a Istanbul Grill) and Erol Doner withdrew their

answer and consented "to entry of default against them in this action." Docket Entry No. 46. On

February 6, 2017, a default judgment was "entered in favor of Plaintiffs' [sic] as against

Defendants 4 Runners, Inc. (d/b/a Istanbul Grill) and Erol Doner." Docket Entry No. 48. This

action was referred to the undersigned for an inquest on damages. See Docket Entry No. 47. On

March 6, 2017, the Court directed the plaintiffs to file their: (1) proposed findings of fact and

conclusions of law; and (2) inquest memorandum, accompanied by supporting affidavits and

exhibits, setting forth proof of their damages, and the defendants to file any opposing

1

memoranda, affidavits and exhibits and findings of fact and conclusions of law. See Docket

Entry No. 53. The plaintiffs filed: (a) "Plaintiff's Proposed Findings of Fact and Conclusions of

Law," signed by the plaintiffs' attorney, Gerrald A. Ellis, Esq. ("Ellis") of the law firm Michael

Faillace & Associates, P.C., Docket Entry Nos. 56 and 57; and (b) "Declaration of Mariana

Velasquez in Support of Motion for Default Judgment," dated March 29, 2017, Docket Entry No.

57-1. The defendants filed "Defendants 4 Runners, Inc. (d/b/a Istanbul Grill and Erol Doner

Findings of Fact and Conclusions of Law," Docket Entry No. 65. On November 8, 2017, the

Court, noting the plaintiffs' contention in their inquest submissions: "A full accounting of

Plaintiffs' damages calculations are [sic] contained within Exhibit A, as compiled by the

undersigned," and that no Exhibit A was filed by the plaintiffs, directed the plaintiffs to file the

referenced Exhibit A. Docket Entry No. 67. The plaintiffs' attorney, Shawn R. Clark, filed a

letter, dated November 13, 2017, stating: "Plaintiffs attach Exhibit A to their Proposed Findings

of Fact hereto." Docket Entry No. 68. No proof of service was filed with the court indicating

that the plaintiffs served their November 13, 2017 letter on the defaulting defendants.

## PLAINTIFFS' INQUEST SUBMISSIONS

In the "Plaintiff's Proposed Findings of Fact," the plaintiffs rely on: (i) the complaint to

support proposed factual findings concerning Hernandez; and (ii) Mariana Velasquez's March

29, 2017 declaration to support proposed factual findings concerning Mariana Velasquez.

According to Mariana Velasquez, she was employed by the defendants "from approximately

2003 until September 2014 as a dishwasher/general assistant." Mariana Velasquez asserts:

> From approximately October 2008 until on or about October 2013, I worked from
> approximately 11:00 a.m. until on or about 10:00 p.m. three days a week and from
> approximately 11:00 a.m. until on or about 10:00 p.m. up until 11:00 p.m. two days
> a week (typically 56 to 57 hours per week). . . . From approximately October 2013
> until September 2014, I worked from approximately 11:00 a.m. until on or about
> 5:00 p.m. three days a week and from approximately 11:00 a.m. until on or about

2

5:15 p.m. two days a week (typically 30.5 hours per week). . . . From approximately October 2008 until on or about October 2013, I was paid a fixed salary of $460 per week. . . . From approximately October 2013 until September 2014, I was paid a fixed salary of $300 per week. . . . I was paid in cash. My pay did not vary even when I was required to stay later or work a longer day than usual. Specifically, I was required to stay 15 minutes past my scheduled departure time twice a week, but my pay did not vary. . . . I was never told by Defendants that my tips were being included as an offset for wages. . . . Defendants did not account for my tips in any daily or weekly accounting of my wages. . . . Defendants did not give me any breaks or meal periods of any kind. . . . . I was never given notification either in the form of posted notices or other means, regarding overtime and wages under the law. . . . Defendants never provided me with an accurate and complete statement of wages with each payment of wages. . . . Defendants never gave me any notice, in English or in Spanish (my primary language), of my rate of pay or the employer's regular pay day.

In the "Plaintiff's Proposed Conclusions of Law," the plaintiffs contend that "the well pleaded allegations contained in the Complaint suffice to establish Plaintiffs' employment dates, wages, and hours. . . . Furthermore, in support of Plaintiff's motion for default judgment, Ms. Velasquez submitted a sworn declaration, testifying to the pertinent facts in this matter, including the duration of her employment with the Defendants, her regular hours and work schedule, and her rate of pay." According to the plaintiffs, Hernandez "was not properly reimbursed for tools of the trade," and "he was required to purchase basic necessities in order to do his job, including a bicycle for $300, a set of replacement breaks for $30 and a replacement tire for $25. Thus, the total cost of the 'tools of the trade' Plaintiff Hernandez was required to purchase as a deliveryman was approximately $355.00. Complaint ¶ 59." The plaintiffs assert that: (a) "Defendants' action were [sic] willful or at a minimum reckless"; (b) they "seek single liquidated damages" and prejudgment interest "under New York law"; (c) they "were improperly denied spread of hours wages"; (d)"[t]here is no evidence that Defendants ever provided either Plaintiff with any NYLL compliant wage and hour notice" and "Plaintiffs are entitled to damages of $50 per week of violation, up to a maximum of $5,000 per Plaintiff"; (e) "[t]here is no evidence in

3

the record that Plaintiffs ever received any document satisfying the requirements of NYLL

§195(3)"; and (f) "Plaintiffs should be awarded attorneys' fees and costs in an amount to be

determined on application to the Court after default judgment is entered." The plaintiffs

contend: "A full accounting of Plaintiff's damages calculation are [sic] contained within Exhibit

A as compiled by the undersigned," Ellis. According to the plaintiffs:

> Plaintiffs' damages calculation include a full estimate of Plaintiffs' wage-and-hour
> claims, including claims for unpaid minimum wages and overtime pay, unpaid
> spread-of-hours wages, unlawful deductions, unlawful "tools of the trade"
> expenses, statutory penalties for violations of the notice and recordkeeping
> requirements of the NYLL, statutory penalties for violations of the wage statement
> provisions of the NYLL, liquidated damages (calculated at the single rate, not
> double), and pre-judgment interest. The only aspect of Plaintiffs' damages not
> included in the annexed damages calculations are attorneys' fees. . . . Plaintiffs are
> further entitled to costs and reasonable attorneys' fees, in an amount to be
> determined after judgment.

The purported "Exhibit A," a single page attached to Clark's November 13, 2017 letter, contains

a table indicating, inter alia: (a) $91,235.25, under the column "Unpaid Wages & OT," and

$58,082.91, under the column "Liq. Damages on Wages & OT," associated with "Marina

Velasquez"; and (b) $22,005, under the column "Unpaid Wages & OT," and $14,208.75, under

the column "Liq. Damages on Wages & OT," associated with "Mario Hernandez Gomez." The

table indicates, under the line "Total Damages": (1) $113,240.25, under the column "Unpaid

Wages & OT"; and (2) $72,291.66, under the column "Liq. Damages on Wages & OT."

## DEFENDANTS' INQUEST SUBMISSIONS

The defendants contend, inter alia, that: (i) they "did not gross $500,000 or more per

year"; (ii) they "buy all their food supplies within New York City"; (iii) they "counted credit

card tips within [their] gross receipts"; (iv) they "employed Plaintiff Gomez as a delivery worker

and kitchen helper"; (v) "[f]rom approximately January 2009 until on or about November 2009,

Plaintiff Gomez worked Wednesday and Sunday from 11:00am until 11:45pm and Monday,

4

Tuesday, Thursday and Friday from 4:00pm until 11:45pm"; (vi) "[f]rom approximately January 2014 until on or about October 2014, Plaintiff Gomez worked Wednesday and Sunday from 11:00am until 11:45pm and Monday, Tuesday, Thursday and Friday from 4:00pm until 11:45pm"; (vii) they "employed Plaintiff Velasquez as a dishwasher and/or a helper"; (viii) "[f]rom approximately October 2008 until October 2013, Plaintiff Velasquez worked 5 days per work week from 11am until 10pm"; and (ix) the plaintiffs "took meal breaks of at least 30 minutes."

In their "Proposed Conclusions of Law," the defendants assert that: (1) they "are not subject to the FLSA"; (2) "Plaintiffs are not covered employees the [sic] under FLSA"; (3) "[t]he FLSA does not apply to small, local restaurants such as Istanbul grill"; (4) "[t]he Court should decline to exercise Supplemental Jurisdiction"; (5) "Plaintiff Velasquez's claims are partially barred by the New York Labor Law six year statute of limitations"; (6) "Plaintiffs have not met their burden proving that Defendants' violations of the Fair Labor Standards Act were willful"; (7) "Plaintiffs cannot recover statutory penalties for New York Labor Law 195 violations, if any"; (8) "Plaintiffs have no private cause of action under New York Labor Law 195.1"; (9) "Plaintiffs have no private cause of action under New York Labor Law 195.3"; and (10) "Plaintiffs' meal breaks are non-compensable."

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). "The court may conduct hearings or make referrals" when it needs to, among other

things, "determine the amount of damages" and "establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). "In permitting, but not requiring, a district court to conduct a hearing before ruling on a default judgment, Rule 55(b) commits this decision to the sound discretion of the district court." Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009). It is "not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment." Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). "[D]etailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record" constitute a basis for making a damages determination upon default. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155. When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather, damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

## *FLSA*

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . . not less than . . . $7.25 an hour.

29 U.S.C. § 206(a)(1)(C).

[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for

6

his employment in excess of the hours above specified at a rate not less than one
and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

"The regular rate of pay at which the employee is employed may in no event be less than the

statutory minimum." 29 C.F.R. § 778.107. "The 'regular rate' under the Act is a rate per hour,"

unless an employee's earnings are determined on another basis. 29 C.F.R. § 778.109. "The

regular hourly rate of pay of an employee is determined by dividing his total remuneration for

employment (except statutory exclusions) in any workweek by the total number of hours actually

worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

"Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be

liable to the employee or employees affected in the amount of their unpaid minimum wages, or

their unpaid overtime compensation, as the case may be, and in an additional equal amount as

liquidated damages." 29 U.S.C. § 216(b). However,

if the employer shows to the satisfaction of the court that the act or omission giving
rise to [an action under FLSA] was in good faith and that he had reasonable grounds
for believing that his act or omission was not a violation of the [FLSA], as amended,
the court may, in its sound discretion, award no liquidated damages or award any
amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

"[I]f it is a requirement of the employer that the employee must provide tools of the trade which

will be used in or are specifically required for the performance of the employer's particular work,

there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased

by the employee cuts into the minimum or overtime wages required to be paid him under the

[FLSA]." 29 C.F.R. § 531.35. "[I]n addition to any judgment awarded to the plaintiff or

plaintiffs," the court shall "allow a reasonable attorney's fee to be paid by the defendant, and

costs of the action." 29 U.S.C. § 216(b). An action under the FLSA "may be commenced within

7

two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

## NYLL

"Unless otherwise provided by law, the following number of hours shall constitute a legal day's work . . . [f]or all . . . employees, except those engaged in farm work and those affected by subdivision four or section two hundred twenty of this chapter, eight hours." NYLL § 160(3). "New York does not have a mandatory overtime law." Hornstein v. Negev Airbase Constructors, 110 A.D.2d 884, 885, 488 N.Y.S.2d 435, 437 (App. Div. 2d Dep't 1985). Instead, the Commissioner of Labor issued a Minimum Wage Order for Miscellaneous Industries and Occupations, providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate." New York Compilation of Codes, Rules and Regulations ("NYCRR") § 142-2.2. The applicable overtime wage rate shall be paid for each workweek in which time over 40 hours is worked. See NYCRR § 142-2.2. "The basic minimum hourly wage rate shall be . . . $7.25 per hour on and after July 24, 2009" until and including December 30, 2013, $8.00 per hour on and after December 31, 2013, and $8.75 per hour on and after December 31, 2014, until and including December 30, 2015. See NYCRR § 142-2.1. "An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which . . . the spread of hours exceeds 10 hours." NYCRR § 142-2.4(a). "The *spread of hours* is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." NYCRR § 142-2.18. "If an employee must

8

spend money to carry out duties assigned by his or her employer, those expenses must not bring

the employee's wage below the required minimum wage." NYCRR § 146-2.7(c).

Effective November 24, 2009, NYLL, Article19, provided:

If any employee is paid by his or her employer less than the wage to which he or
she is entitled under the provision of this article, he or she may recover in a civil
action the amount of any such underpayments, together with costs and such
reasonable attorney's fees as may be allowed by the court and unless the employer
proves a good faith basis to believe that its underpayment of wages was in
compliance with the law, an additional amount as liquidated damages equal to
twenty-five percent of the total of such underpayments found to be due the
employee and any agreement between the employee, and the employer to work for
less than such wage shall be no defense to such action.

NYLL § 663(1).

Effective April 9, 2011, NYLL, Article 19, was amended as follows:

If any employee is paid by his or her employer less than the wage to which he or
she is entitled under the provisions of this article, he or she shall recover in a civil
action the amount of any such underpayments, together with costs all reasonable
attorney's fees, prejudgment interest as required under the civil practice law and
rules, and unless the employer proves a good faith basis to believe that its
underpayment of wages was in compliance with the law, an additional amount as
liquidated damages equal to one hundred percent of the total of such underpayments
found to be due. Any agreement between the employee, and the employer to work
for less than such wage shall be no defense to such action.

NYLL § 663(1).

Liquidated damages for any wage-payment violation occurring on or after November 24, 2009,

may not be recovered under both FLSA and NYLL. See Hengjin Sun v. China 1221, Inc., No.

12-cv-7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016)("the Court joins the emerging

jurisprudential trend and finds that an employee may not recover cumulative liquidated damages

under both the FLSA and NYLL for overlapping claims after November 24, 2009."). Plaintiffs

asserting unpaid wages claims under the FLSA and NYLL "are not entitled to recover twice for

the same injury; they will, however, be able to take advantage of the higher measure of

damages." Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725, 2010 WL 4159391, at

*2 n.2 (S.D.N.Y. Sept. 30, 2010).

New York's Wage Theft Prevention Act, an amendment to NYLL effective as of April

9, 2011, provides:

> Every employer shall . . . furnish each employee with a statement with every
> payment of wages, listing the following: the dates of work covered by that payment
> of wages; name of employee; name of employer; address and phone number of
> employer; rate or rates of pay and basis thereof, whether paid by the hour, shift,
> day, week, salary, piece, commission, or other; gross wages; deductions;
> allowances, if any, claimed as part of the minimum wage; and net wages. For all
> employees who are not exempt from overtime compensation as established in the
> commissioner's minimum wage orders or otherwise provided by New York state
> law or regulation, the statement shall include the regular hourly rate or rates of pay;
> the overtime rate or rates of pay; the number of regular hours worked, and the
> number of overtime hours worked.

NYLL §195(3).

From April 9, 2011, to February 26, 2015, "[i]f any employee is not provided a statement or

statements as required by subdivision three of section one hundred ninety-five of this article, he

or she shall recover in a civil action damages of one hundred dollars for each work week that the

violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars,

together with costs and reasonable attorney's fees." NYLL § 198(1-d). Effective February 27,

2015, such an employee "shall recover in a civil action damages of two hundred fifty dollars for

each work day that the violations occurred or continue to occur, but not to exceed a total of five

thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1-d).

"[A]n action to recover upon a liability imposed by [NYLL Article 6, Payment of Wages]

must be commenced within six years," NYLL § 198(3), including a liability for unpaid overtime

compensation, see Dragone v. Bob Bruno Excavating, Inc., 45 A.D.3d 1238, 1239, 847 N.Y.S.2d

10

251, 252-53 (App. Div. 3d Dep't 2007) ("plaintiff may recover wages that were not paid during

the six years that preceded the filing of the complaint if he is successful on his claim under Labor

Law article 6."). "[A]n action to recover upon a liability imposed by [NYLL Article 19,

Minimum Wage Act] must be commenced within six years." NYLL § 663(3).

### Attorney's Fees

When exercising their discretion to determine the reasonableness of the attorney's fees

sought in an action based on a federal question, courts in this Circuit use the "presumptively

reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the

lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required

by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating

the presumptively reasonable fee, a district court must consider, among others, the twelve factors

articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor

Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190. Those factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
the level of skill required to perform the legal service properly; (4) the preclusion
of employment by the attorney due to acceptance of the case; (5) the attorney's
customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
limitations imposed by the client or the circumstances; (8) the amount involved in
the case and the results obtained; (9) the experience, reputation, and ability of the
attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services

by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty.

of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11,

104 S. Ct. 1541, 1547 n.11 (1984)). "Thus, 'a reasonable hourly rate' is not ordinarily

11

ascertained simply by reference to rates awarded in prior cases." Id. "[T]he equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar, experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209. "[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11). Attorney-fee awards include reasonable out-of-pocket expenses that are charged to clients ordinarily, such as photocopying, travel, telephone costs, postage and computerized research. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## APPLICATION OF LEGAL STANDARD

The "Plaintiff's Proposed Findings of Fact and Conclusions of Law," signed by Ellis, are ambiguous and confusing because the document's title, as well as its constituent parts, styled (i) "Plaintiff's Proposed Findings of Fact," including the assertion that "Plaintiff filed this action," and (ii) "Plaintiff's Proposed Conclusions of Law," including the assertions that "Defendants were employers of Plaintiff" and "the only issue is the extent of damages owed to Plaintiff," use a singular form of the noun "Plaintiff" while at the same time also using a plural form of the noun "Plaintiffs." When the noun "Plaintiff" is used in the singular form, without identifying the plaintiff's name, it is not clear which one of the two plaintiffs is being referenced. For

example, according to the inquest submissions, "the only issue is the extent of damages owed to Plaintiff," and the inquest submissions contain only one declaration, that by Mariana Velasquez, suggesting that she is the "Plaintiff" referenced in the phrase "the only issue is the extent of damages owed to Plaintiff." However, the inquest submissions, under "Plaintiff's Proposed Conclusions of Law," contain a subheading styled "Plaintiff Hernandez Was Not Properly Reimbursed for Tools of the Trade," suggesting that "the extent of damages owed to Plaintiff" may refer to Hernandez, notwithstanding that no affidavit by Hernandez was submitted in support of the plaintiffs' damages request. If the "Plaintiff" referenced in the phrase "the only issue is the extent of damages owed to Plaintiff" is Mariana Velasquez, it is not clear why the inquest submissions include any discussion of Hernandez. If the "Plaintiff" referenced in the phrase "the only issue is the extent of damages owed to Plaintiff" is Hernandez, it is not clear why the inquest submissions include any discussion of Mariana Velasquez and why Hernandez did not submit an affidavit in support of his damages request.

The complaint, filed on November 12, 2014, alleges that the plaintiff, "Marina Velasquez," has been employed by Defendants "from approximately 2003 until the present date," "as a dishwasher/general assistant," and Spanish is "Plaintiff Velasquez's primary language." However, a declaration submitted in support of the inquest was made in the English language by "Mariana Velasquez" who asserts that she "was employed at Istanbul Grill from approximately 2003 until September 2014 as a dishwasher/general assistant." No evidence exists or explanation is provided, in the "Plaintiff's Proposed Findings of Fact and Conclusions of Law" or "Declaration of Mariana Velasquez in Support of Motion for Default Judgment," indicating whether the plaintiff in this case, Marina Velasquez, is the same person as the declarant, Mariana Velasquez. In light of the plaintiffs' failure to establish that declarant

13

Mariana Velasquez is the same person as plaintiff Marina Velasquez, the declaration of Mariana Velasquez cannot support the plaintiffs' request for damages concerning the plaintiff Marina Velasquez.

Alternatively, assuming that Marina Velasquez and Mariana Velasquez are the same person, it is not clear to the Court, in light of the allegation in the complaint that "Spanish" is "Plaintiff Velasquez's primary language" and the paucity of information in Mariana Velasquez's March 29, 2017 declaration about her "primary language," that Mariana Velasquez wrote or understood the declaration that she signed. Although it is not unusual for the plaintiffs represented in similar cases in this court by Michael Faillace & Associates, P.C., the law firm representing the plaintiffs in this action, to have "Spanish" as their "primary language," see e.g., Reyes v. 640 Pelham Food Corp., No. 16-CV-7624 (JPO), Complaint ¶ 54, Docket Entry No. 1, ("Defendants never provided Plaintiff Reyes with a written notice, in English and in Spanish (Plaintiff Reyes' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1)."), it is unusual not to provide any explanation in this action for the inconsistency between the allegation in the complaint that "Spanish" is the plaintiff's "primary language" of the plaintiff, "Marina Velasquez," and the paucity of information about her ability to speak or understand the English language, such as is provided, for example, in Reyes. See Declaration of Jose Pablo Reyes in Support of Plaintiff's Motion for Default Judgment ¶ 28, Docket Entry No. 21-8 ("This document has been translated to me in my native language of Spanish, and I fully comprehend the contents ('Este documento ha sido traducido a mi primer idioma el Español y yo comprendo todos los términos.')."); see also Nicolas v. 701 Deli Inc., 16-CV-7699 (ER), Declaration of Manuel Alberto Nicolas in Support of Plaintiff's Motion for Default Judgment ¶ 27, Docket Entry No. 26-10 ("This document has been

translated to me in my native language of Mixteco, and I fully comprehend the contents."),
notwithstanding the allegation in the Complaint ¶ 60, Docket Entry No. 1 ("Defendants never
gave any notice to Plaintiff Nicolas, in English and in Spanish (Plaintiff Nicolas' primary
language), of his rate of pay, employer's regular pay day, and such other information as required
by NYLL § 195(1).").

The plaintiffs contend, erroneously, that Mariana Velasquez's declaration was submitted
"in support of Plaintiffs' motion for default judgment." No such motion has been filed in this
action; rather, the default judgment was entered in favor of the plaintiffs against 4 Runners, Inc.
(d/b/a Istanbul Grill) and Erol Doner based on the defendants' "consent to entry of default
against them in this action." Docket Entry No. 48. However, Mariana Velasquez submitted
previously her declaration, dated April 7, 2016, "in opposition to Defendants' request that the
Court dismiss the case." Docket Entry No. 35. In the April 7, 2016 declaration, she stated,
under the penalty of perjury: "My work at Istanbul Grill consisted of bussing tables, restocking
merchandise, cleaning, packing orders for delivery, making occasional deliveries, preparing
food, and working as a cashier," as well as "restock[ing] the bar's refrigerator on a daily basis."
Mariana Velasquez does not mention in her April 7, 2016 declaration that she was employed by
the defendants "as a dishwasher," which is what she alleged in the complaint and what she stated
in her March 29, 2017 declaration, under the penalty of perjury. Mariana Velasquez's statement,
in her April 7, 2016 declaration, that "[f]rom October 2008 until on or about October 2013, I
worked at Istanbul Grill from approximately 11:00 a.m. until on or about 11:00 p.m. three days a
week and from approximately 11:00 a.m. until on or about 11:15 p.m. two days a week (typically
60.5 hours per week)," does not jibe with her March 29, 2017 statement that, "[f]rom
approximately October 2008 until on or about October 2013, I worked from approximately 11:00

a.m. until on or about 10:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 10:00 p.m. up until 11:00 p.m. two days a week (typically 56 to 57 hours per week)." No explanation is provided by Mariana Velasquez or the plaintiffs' attorney about this discrepancy between Mariana Velasquez's declarations. This discrepancy and the unexplained inconsistency between the plaintiff's alleged primary language and the language of her declaration makes Mariana Velasquez's credibility suspect and her declaration incredible.

Although it appears that Hernandez seeks "damages . . . for his 'tools of the trade' claim," he submitted no affidavit or any other evidence to prove his damages. In their "Plaintiff's Proposed Conclusions of Law," under subheading "Plaintiff Hernandez Was Not Properly Reimbursed for Tools of the Trade," the plaintiffs contend that "the total cost of the 'tools of the trade' Plaintiff Hernandez was required to purchase as a deliveryman was approximately $355.00," making citation to "Complaint ¶ 59." However, the complaint is not evidence. The "Plaintiff's Proposed Conclusions of Law" do not appear to discuss any other damages incurred by Hernandez as his name is not mentioned elsewhere in "Plaintiff's Proposed Conclusions of Law," apart from the request for "damages . . . for his 'tools of the trade' claim." Although "Plaintiff's Proposed Conclusions of Law" contain recitations of law, apart from contentions related to Hernandez's damages "for his 'tools of the trade,'" neither Hernandez nor Marina Velasquez is mentioned by name in that part of the document and neither an aggregate nor a separate amount of damages with respect to each plaintiff is identified in the section styled "Damages" of "Plaintiff's Proposed Conclusions of Law." The plaintiffs failed to submit their inquest memorandum, despite being directed to do so by the Court's March 6, 2017 order.

The plaintiffs' initial inquest submission, Docket Entry No. 56, "Plaintiff's Proposed Findings of Fact and Conclusions of Law," signed by Ellis, did not include any declaration or

16

exhibit, notwithstanding that, in that document, Ellis relied on the "Declaration of Mariana Velasquez" to support "Plaintiff's Proposed Findings of Fact" and contended, under the heading "Damages," that "[a] full accounting of Plaintiff's damages calculation are [sic] contained within Exhibit A, as compiled by the undersigned." However, this is not the only case in which Ellis made inquest submissions on a plaintiff's behalf, without any evidentiary support. See Robles v. P & H 49 Corp., No. 16 Civ. 4885 (RJS) (HBP), Plaintiff's Proposed Findings of Fact and Conclusions of Law, ¶ 99, Docket Entry No. 34 ("A full accounting of Plaintiff's damages calculations are [sic] contained within Exhibit A, which applies the applicable federal and New York state law described *supra*."). The court in Robles found the plaintiff's inquest submissions deficient, stating:

> All that plaintiff has submitted are proposed findings of fact and conclusions of law signed by his attorney and a damages chart. None of these materials have evidentiary weight; they are not signed by someone with first-hand knowledge of the events set forth therein and they are not sworn to or executed under penalty of perjury.
>
> Robles, No. 16 Civ. 4885 (RJS) (HBP), Docket Entry No. 35.

Similarly, Ellis submitted "Plaintiff's Proposed Findings of Fact and Conclusions of Law," without any evidentiary support, in Ortega v. JR Primos 2 Restaurant Corp., No. 15-CV-9183 (JCF), Docket Entry No. 36.

Subsequently and without explanation, the plaintiffs in this action filed "Plaintiff's Proposed Findings of Fact and Conclusions of Law," Docket Entry No. 57, signed by Ellis, which was a document identical to the previously filed "Plaintiff's Proposed Findings of Fact and Conclusions of Law," except that, this time, Ellis also filed the March 29, 2017 declaration of Mariana Velasquez, Docket Entry No. 57-1. However, notwithstanding the plaintiffs' contention, under the heading "Damages," that "[a] full accounting of Plaintiff's damages

17

calculation are [sic] contained within Exhibit A, as compiled by the undersigned," no affidavit by
Ellis, the person who "compiled" "Exhibit A," or "Exhibit A" were included in the plaintiffs'
inquest submissions. The plaintiffs' inquest submissions did not specify, under the heading
"Damages," any amount of damages that they seek.

The Court's November 8, 2017 order noted that, despite Ellis's contention to the contrary
"no Exhibit A was filed by the plaintiffs," and provided an opportunity for the plaintiffs and their
attorney to correct the deficiency. The plaintiffs failed to correct their deficient inquest
submissions because they filed the purported "Exhibit A to their Proposed Findings of Fact,"
without an affidavit of a person with personal knowledge, see Fed. R. Evid. 602, alleged to be
the person who "compiled" it, Ellis, or another proponent who could authenticate the proffered
document. See Fed. R. Civ. P. 901. More significantly, no affidavit was submitted in which the
proponent of "Exhibit A" would explain the meaning of information contained in it, the
calculation methods used to arrive at the proposed figures and the reasoning behind the
calculation methods employed and the figures proposed. Ellis's omission of his affidavit
explaining the purported "Exhibit A" that he "compiled" is astounding, in light of: (a) the rules
of procedure and evidence governing civil actions such as this one, the familiarity with which
Ellis verified as a condition of his admission to practice in this court (see Local Civil Rule 1.3 of
this court); and (b) the Court's March 6, 2017 clear and unambiguous order directing that, in
addition to the proposed findings of fact and conclusions of law, the plaintiffs "shall prepare and
file" "an inquest memorandum, accompanied by supporting affidavits and exhibits, setting forth
proof of its damages." The absence of Ellis's affidavit is also perplexing, given that in numerous
other cases, declarations have been filed by the managing member of Ellis's law firm Michael
Faillace & Associates, P.C., Michael Faillace, explaining the charts containing the calculations

of damages. See e.g., Reyes, No. 16-CV-7624 (JPO), Docket Entry No. 21; Barrera v. Tokana Café Bar Restarurant Inc., 16-CV-2649 (RA) (RLE), Docket Entry No. 38; Nicolas, No. 16-CV-7699 (ER), Docket Entry No. 26. While the Court does not express any opinion about the sufficiency of the chart explanations in the cited declarations, they illustrate one way to present evidence of the damages calculation upon default. This, the plaintiffs failed to do.

The plaintiffs contend that they "should be awarded attorneys' fees and costs in an amount to be determined on application to the Court after default judgment is entered." "A default judgment is a final action by the district court in the litigation." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The default judgment has already been entered, see Docket Entry No. 48, and the inquest on damages is all that remains in this action and, consequently, is the last opportunity for the plaintiffs to present evidence in support of their damages, including their attorney's fee request. In light of the clear and unambiguous order directing the plaintiffs to submit "an inquest memorandum, accompanied by supporting affidavits and exhibits" setting forth proof of their damages, and the fact that the plaintiffs' law firm has submitted such proof in similar cases, see e.g., Reyes, 16-CV-7624 (JPO), Docket Entry No. 21, the unexplained omission in the inquest submissions of any evidence in support of what appears to be the plaintiffs' request for an unidentified amount of attorney's fees is unjustified and inexcusable.

In addition to the above-mentioned deficiencies, the Court notes that "Plaintiff's Proposed Findings of Fact and Conclusions of Law" are replete with the random use of various fonts and highlighted text, throughout the document, making it very difficult to read it. The random and baseless nature of the plaintiffs' jumbled use of fonts and highlighted text is exemplified in ¶ 62, Docket Entry No. 57, in which words and numbers are only partially and

19

randomly bold and in mixed fonts, such as in this part of the sentence: "'**du**ring **the work week.'**
**12 N.Y.C.R.R. § 146**-3.5 (2013)." The plaintiffs' attorney should refrain from filing documents
containing a random and unjustified mix of fonts and highlighted text as it is improper, eye-
straining and indicative of the employment of an abundance of unchecked and unedited copying
and pasting practices and carelessness on the part of the filing attorney.

The defendants' "Findings of Fact" are not supported by any evidence, as required by
Fed. R. Civ. P. 55(b)(2)(C), and no affidavits or exhibits are submitted by the defendants in
support of their inquest submissions, as directed by the Court's March 6, 2017 order. The
defendants' "Conclusions of Law" include, improperly, arguments concerning the defendants'
liability, which have been rejected previously by your Honor when the defendants' summary
judgment motion was denied, namely: (i) the defendants are not subject to the FLSA; (ii) the
plaintiffs are not covered employees under the FLSA; and (iii) the court should decline to
exercise supplemental jurisdiction. The February 6, 2017 default judgment established the
defendants' liability in this action and the only issue remaining to be determined is the amount of
the plaintiffs' damages. Apart from conclusory statements, such as "Plaintiffs' meal breaks are
non-compensable," the defendants failed to address the issue of damages in their submissions.

The plaintiffs filed deficient inquest submissions and failed to correct the deficient
submissions, despite having been given an opportunity to do so. The Court finds that the
plaintiffs failed to establish, with reasonable certainty, that an award of any amount of damages
is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that no damages be awarded to the plaintiffs.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken, 40 Centre Street, Room 2101, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Oetken. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      December 6, 2017

Respectfully submitted,

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE